Filed 7/15/21  P. v. Zaragoza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | G058966 |
| Plaintiff and Respondent, | (Super. Ct. No. 17CF0067) |
| v. | O P I N I O N |
| GILBERTO FUENTES ZARAGOZA, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Holly D. Wilkens and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Gilberto Fuentes Zaragoza was convicted of multiple counts of child sex abuse for molesting his niece Laura P.  His sole contention on appeal is that the trial court erred in admitting evidence regarding the damaging effect his abuse had on Laura's physical and emotional well-being.  Appellant contends this evidence was so inflammatory it violated his right to a fair trial.  We disagree and affirm the judgment.

FACTS

Following the death of her father when she was a toddler, Laura lived in a Tustin apartment with her brother, mother and aunt.  When Laura was about six years old, her aunt married appellant, and he moved into the apartment as well.  Since appellant was the only man in the household, Laura trusted him like a father.

However, when Laura was about nine years old, appellant started touching her inappropriately around the apartment, and that led to more serious transgressions.  One day, he went into Laura's bedroom and started kissing her.  She resisted and told him to stop, but he pushed her onto her bed and raped her.  Afterward, Laura felt sad and confused.  Appellant told her not to tell anyone what he had done, so she kept the incident to herself.

A few years later, when Laura was 12, appellant did the same thing to her in her bedroom.  During this episode, Laura bit appellant on the arm to get him to stop, but that did not deter him.

The next incident occurred two years later, when Laura was 14 years old.  On that occasion, Laura was half asleep when appellant crawled into her bed with her and penetrated her vagina with his penis.  In the course of doing so, he also kissed and groped Laura very roughly, leaving a hickey on her breast.

Later that same year, appellant again entered Laura's bedroom unannounced.  He forced her onto the bed, reached under her clothing and began penetrating her vagina with his fingers.  But then somebody walked by the room, and he ceased the attack for fear of being discovered.

2

The final episode occurred in 2016, when Laura was 15 years old. Laura was in the kitchen making breakfast when appellant pulled her into the living room, forced her onto the floor and raped her. The next day, he had Laura take a pregnancy test, and it came back negative.

In the wake of that incident, Laura disclosed appellant's abuse to the police, and they had her make a covert phone call to appellant for investigative purposes. During the call, appellant admitted the last two incidents. He also confessed to them when he was subsequently interviewed in-person by the police.

The investigation culminated in a five-count felony complaint against appellant. The first two counts alleged aggravated sexual assault, in the form of rape, when Laura she was under the age of 14. (Pen. Code, § 269, subd. (a)(1).) Count three, which was predicated on the hickey episode, alleged appellant raped Laura when she was age 14 or older. (*Id*. at § 261, subd. (a)(2).) Count four alleged the same offense based on the living room rape in 2016. (*Ibid*.) And count five alleged sexual penetration based on the digital penetration that occurred in Laura's bedroom. (*Id*. at § 289, subd. (a)(1)(C).)

At trial, Laura testified that when she was about 12 years old, she started inflicting physical harm on herself in response to appellant's sexual abuse. Laura did not describe the harm in detail, but she did say she cut and burned her wrists and thighs. She also said she thought about killing herself during this time. However, the more she thought about it, the more she realized suicide was not the answer to her problems. So, she told a friend what appellant had been doing to her, and that led to her subsequent disclosures to the police.

The prosecution's expert witness on child abuse testified it is not uncommon for molestation victims to engage in self-destructive behavior. She said inflicting self-harm is a coping mechanism victims use to distract themselves from the psychological and emotional pain they are suffering as a result of being abused.

3

During closing argument, defense counsel conceded appellant was guilty on counts four and five, the crimes to which he confessed. However, counsel argued appellant was not guilty of the remaining three charges. The jury disagreed and convicted appellant across the board. The trial court sentenced him to 30 years to life in prison, plus a consecutive term of 26 years, for his crimes. The sentence is not challenged.

DISCUSSION

Appellant contends the trial court abused its discretion and undermined his due process right to a fair trial by allowing the prosecution to admit the evidence regarding Laura's self-harm and suicidal thoughts. We cannot agree.

When the issue was litigated before trial, defense counsel objected to the evidence on the basis it was highly inflammatory and possessed little evidentiary value. The court said it was inclined to admit the evidence so long as there was expert testimony saying that self-harm is a common symptom of child sex abuse. However, if defense counsel wanted to renew her objection when the evidence was being introduced at trial, the court would entertain any arguments she had at that time.

As it turned out, defense counsel did not object to Laura's testimony about her self-harm or suicidal thoughts, nor did she object to the expert's testimony that those are common signs of child sexual abuse. And when the prosecutor brought up the issue in closing argument, defense counsel was likewise silent.[1] At no point following the

---

[1]   The prosecutor mentioned the issue twice during her closing argument. The first time, she simply pointed out that Laura's suicidal thoughts and psychological pain were part of what motivated her to report appellant's conduct. The second time, she discussed the issue in greater depth, saying "the degree of physical harm that [Laura's] causing herself is a direct result . . . of [the] harm that [appellant] caused her. [¶] This is what she was forced to do to keep her life intact. This is how she was putting up with all of the hurt and all of the pain that he caused her, not only having to live with the memories of being raped repeatedly . . . but now inflicting physical [harm] – by cutting [her]self and burning [her]self to cope. [¶] Luckily, Laura did what she could so she didn't have to end her life. And she was here in court today to testify and tell you her story. And that's what this case is about. This case is about Laura, what [appellant] did to her, what he stole from her. And now it's time for you to hold him accountable and bring Laura justice."

4

pretrial hearing did appellant's attorney challenge the evidence or argument regarding Laura's self-harm or suicidal thoughts.

As respondent rightly notes, that means appellant forfeited his right to challenge that evidence on appeal. The law is well established that a party cannot complain on appeal about evidence to which he did not object at trial. (Evid. Code, § 353; *People v. Cage* (2015) 62 Cal.4th 256, 287.) Even though appellant objected to the subject evidence before trial, his failure to renew his objection at trial – despite the trial court's invitation to do so – constitutes a forfeiture under the law. (*People v. Holloway* (2004) 33 Cal.4th 96, 133; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1174; *People v. Karis* (1988) 46 Cal.3d 612, 634, fn. 16; *People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3.)

Anticipating this result, appellant contends his attorney was ineffective for failing to preserve the issue for appeal. (See *Strickland v. Washington* (1984) 466 U.S. 668 [the Sixth Amendment guarantees criminal defendants the right to competent representation at trial].) However, because "[a]n attorney may choose not to object for many reasons, . . . the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.) "If, as here, the record fails to show why counsel failed to object, the claim of ineffective assistance must be rejected on appeal unless counsel was asked for an explanation and failed to provide one or there can be no satisfactory explanation." (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 467; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Defense counsel was never asked to explain why she did not object to the evidence of Laura's self-harm and suicidal thoughts at trial, but that failure can be explained on many levels. For starters, the evidence was relevant to Laura's credibility and the truth of the charged offenses, given the expert's testimony that self-destructive behavior is a common symptom of sexual abuse. Even though appellant admitted two of the charges, the jury still had to decide whether he was guilty of the remaining charges.

5

The fact Laura started harming herself when she was 12 years old – years before the uncontested charges arose – provided strong evidence that he was.

Furthermore, the evidence of what Laura did to herself was not particularly shocking in light of what appellant did to her. Indeed, very few jurors would be surprised to hear that a young girl experiencing sexual abuse from her uncle was inflicting physical harm on herself and harboring suicidal thoughts. Those ramifications are not pleasant to think about, of course, but they pale in comparison to what appellant put Laura through.

Appellant analogizes the evidence of Laura's self-harm and suicidal thoughts to victim autopsy photos, which are subject to exclusion under Evidence Code section 352 if they are particularly grotesque and of little evidentiary value. (See, e.g., *People v. Marsh* (1985) 175 Cal.App.3d 987, 999 [trial court erred in admitting especially graphic autopsy photos of the young victim's body].) But Laura did not describe her self-harm in detail, nor was the jury presented with any photographic evidence of her self-inflicted wounds. Because Laura's brief testimony on the topic was both probative of the charges and unlikely to invoke a unique emotional bias against appellant, defense counsel was not remiss for failing to challenge it at trial. (See generally *People v. Price* (1991) 1 Cal.4th 324, 387 [the failure to make futile objections does not constitute ineffective assistance of counsel].)

Assuming otherwise, the nature of the subject evidence was not so inflammatory as to infringe appellant's fair trial rights or affect the outcome of the trial. While the evidence certainly did not make appellant look good, he was already tarnished by virtue of his confession to having sexually molested Laura on two different occasions. Knowing this going in, defense counsel did not attempt to paint appellant as an upstanding citizen. In fact, in her opening statement to the jury, defense counsel readily admitted appellant was a "bad man" who had harmed Laura in ways that were "unimaginable," a reasonable tack for an advocate who is going to have to admit two serious sexual assaults by her client. Against this backdrop, the evidence of Laura's self-

6

harm and suicidal thoughts was not a game changer.  Because the evidence does not undermine our confidence in the jury's verdict, we must affirm.  (See *People v. Johnson* (2016) 62 Cal.4th 600, 653 [in addition to proving deficient performance, a defendant alleging ineffective assistance of counsel must also demonstrate he suffered prejudice to a reasonable probability, meaning a probability sufficient to undermine confidence in the outcome of the case].)

DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.